# EXHIBIT A

| From: | Sotiropoulos, Anastasia M (CHI - X66036) |
| To: | "Kelly.williams@aztecusa.com"; "ldk@mkwlaw.com" |
| Cc: | "legal@alterdomus.com"; "samuel.buhler@alterdomus.com"; Dustin.Thompson@alterdomus.com; Gavin.White@alterdomus.com; Joey.Catania@alterdomus.com; Spencer, Joshua M (CHI - X65709) |
| Bcc: | Sieger, John P.; Cundy, Stacy A.; Aaron.David@aig.com; Maurice.Horwitz@aig.com; Eric.Newfield@aig.com; Borenstein, Evan S.; Rasmussen, Mark D.; John.Verzosa@aig.com; "Yager, Allison E." |
| Subject: | Cortland/Aztec - Pledge Enforcement Letter |
| Date: | Tuesday, November 17, 2020 5:58:11 PM |
| Attachments: | Cortland Aztec - Pledge Enforcement Letter (Executed) 80483546 1.PDF |

All,

Reference is made to that certain First Lien Credit Agreement dated as of February 13, 2019 (as amended, restated, supplemented or otherwise modified and in effect as of the date hereof, the "Credit Agreement"), by and among Aztec / Shaffer, LLC, as borrower ("Borrower"), ASAIG, LLC as guarantor ("ASAIG"), Cortland Capital Market Services LLC as Term Loan Agent and collateral agent ("Collateral Agent"), Texas Capital Bank, National Association, as the Revolving Agent, and the financial institutions party thereto from time to time as lenders.

On behalf of Cortland Capital Market Services LLC, in its capacity as Collateral Agent, attached please find the executed Pledge Enforcement Letter.

Please confirm receipt.

Best,
Anastasia

### Anastasia Sotiropoulos | Holland & Knight

Associate
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700 | Chicago, Illinois 60606
Phone 312.928.6036 | Fax 312.578.6666
anastasia.sotiropoulos@hklaw.com | www.hklaw.com

Add to address book | www.hklaw.com | hklaw.com

# alterDomus*

November 17, 2020

VIA FEDEX AND EMAIL

Aztec / Shaffer, LLC and ASAIG, LLC
c/o WoodRock & Co.
601 W. 6th Street
Houston, TX 77007
Attn: A. Kelly Williams
Kelly.williams@aztecusa.com

L. Don Knight
8100 Washington Ave., Suite 1000
Houston, TX 77007
ldk@mkwlaw.com

**Re:       Notice of Exercise of Certain Rights Pursuant to First Lien Credit
          Agreement and First Lien Security Agreement**

Ladies and Gentlemen:

Reference is hereby made to (i) that certain First Lien Credit Agreement dated as of February 13, 2019 (as amended, restated, supplemented or otherwise modified and in effect as of the date hereof, the "Credit Agreement"), by and among Aztec / Shaffer, LLC, as borrower ("Borrower"), ASAIG, LLC as guarantor ("ASAIG"), Cortland Capital Market Services LLC as Term Loan Agent and Collateral Agent ("Collateral Agent"), Texas Capital Bank, National Association, as the Revolving Agent ("Revolving Agent"), and the financial institutions party thereto from time to time as lenders ("Lenders") and (ii) that certain First Lien Security Agreement dated as of February 13, 2019 (as amended, restated, supplemented or otherwise modified and in effect as of the date hereof, the "Security Agreement"), by and among Borrower and ASAIG as grantors (collectively, in such capacity, "Grantors") and Collateral Agent. Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Security Agreement or, if not in the Security Agreement, in the Credit Agreement.

Events of Default have occurred and are continuing under the Credit Agreement, including, without limitation, those identified on **Exhibit A** hereto (collectively the "Specified Events of Default").

As a result of the continuation of the Specified Events of Default, Collateral Agent hereby gives written notice to Grantors that, effective immediately, pursuant to Section 15 of the Security Agreement (i) ASAIG is no longer entitled to exercise voting rights, and all other ownership or other consensual rights in respect of all Pledged Equity and (ii) Collateral Agent



**Alter Domus (US) LLC**
Tel. +1 312 564 5100
225 W. Washington Street, 9th Floor
Chicago, IL 60606

www.alterDomus.com

shall, in its capacity as duly appointed and acting agent, proxy and attorney-in-fact of ASAIG, from and after the date hereof, have the sole right to exercise all voting and other consensual rights, powers, privileges and remedies to which a holder of the Pledged Equity would be entitled, including, without limitation, giving or withholding written consents, calling special meetings, and voting at such meetings, provided, however, that for the avoidance of doubt, nothing herein shall cause the transfer of the Pledged Equity to the Collateral Agent.

As set forth in Sections 10 and 15 of the Security Agreement, all powers, authorizations and agencies contained in the Security Agreement are coupled with an interest and are irrevocable and shall only terminate upon Payment in Full. In its capacity as ASAIG's attorney-in-fact, Collateral Agent has executed the written consent attached hereto as **Exhibit B** (the "Member Consent"), which by its terms shall become effective immediately and automatically upon delivery of this letter, pursuant to which Collateral Agent, in its capacity as the duly appointed and acting agent, proxy and attorney-in-fact of ASAIG, as sole member of the Borrower, will amend and restate Borrower's amended and restated limited liability company agreement.

Furthermore, in accordance with Sections 15 and 27 of the Security Agreement, all rights of ASAIG to receive and retain any and all cash dividends and distributions, payments or other Proceeds paid in respect of the Pledged Equity shall immediately cease and any such distributions, dividends, other property paid or payable with respect to such Pledged Equity shall be paid to Collateral Agent. In connection with this notice, Collateral Agent hereby informs Grantors that it is exercising its rights under the Security Agreement (including, without limitation, pursuant to Section 15 thereof) to take action by written consent with respect to the matters set forth in the exhibits attached hereto and that ASAIG's rights to vote any and all of the Pledged Equity and other Investment Related Property representing equity interests in Borrower (collectively "Applicable Equity"), and that the Grantors' rights to exercise any other rights pertaining to the Applicable Equity, are hereby terminated. Effective immediately, the Collateral Agent has the sole and exclusive right to exercise any and all voting and other rights with respect to the Applicable Equity as provided in Section 15 of the Security Agreement. As noted above, pursuant to Sections 10 and 15 of the Security Agreement, all powers, authorizations and agencies contained in the Security Agreement are coupled with an interest and are irrevocable until Payment in Full.

Additionally, as a result of Collateral Agent's exercise of the rights and remedies detailed in this notice, each of you is hereby given notice of the attached Member Consent and the actions taken thereby.

The Grantors are and shall remain liable for all accrued and accruing interest, fees, charges and other amounts (including, without limitation, unpaid principal, legal fees and expenses) due under the Credit Agreement and the other Loan Documents until all such amounts are indefeasibly paid in full.

Nothing herein is intended or shall be deemed or construed to constitute a waiver of any past, present or future Default or Event of Default under the Credit Agreement or any other Loan Document and shall not directly or indirectly: (i) impair, prejudice or otherwise adversely affect

Collateral Agent's or any Lender's right at any time to exercise any right, privilege or remedy in connection with the Security Agreement, Credit Agreement, any other Loan Document or any other agreement, document or instrument, (ii) amend or alter any provision of the Security Agreement, Credit Agreement, any other Loan Document or any other agreement, document or instrument, or (iii) constitute any course of dealing or other basis for altering any obligation of ASAIG, Borrower or any other Grantor or any right, privilege or remedy of Collateral Agent or any Lender under the Security Agreement, Credit Agreement, any other Loan Document or any other agreement, document or instrument or constitute any consent by Collateral Agent or any Lender to any prior, existing or future violations of the Security Agreement, Credit Agreement or any other Loan Document.  Collateral Agent hereby expressly reserves, on behalf of itself and the Lenders, all rights and remedies available to the Collateral Agent and Lenders on account of all Defaults and Events of Default in existence from time to time, including, without limitation, the Events of Default described above, whether such rights and remedies arise as a matter of law, in equity, pursuant to any Loan Document, or otherwise.  In addition, the Collateral Agent and Lenders reserve their right to strictly enforce any and all covenants, conditions and provisions of the Credit Agreement and the Loan Documents (including, without limitation, the exercise of all rights and remedies thereunder with respect to the Events of Default described above) and to demand strict and absolute compliance with such covenants, conditions and provisions.

Very truly yours,

Cortland Capital Market Services LLC,
as Collateral Agent

By: _____
Name:  Jon Kirschmeier
Its:    Associate Counsel

## Exhibit A
### Specified Events of Default

Total Leverage Ratio.  Borrower has breached the Total Leverage Ratio financial covenant under Section 8.9 of the Credit Agreement for each of the twelve (12) month periods ending June 30, 2019, September 30, 2019, December 31, 2019, March 31, 2020, June 30, 2020 and September 30, 2020.  Failure to comply with this financial covenant is a continuing Event of Default under Section 9.1(c) of the Credit Agreement.

Restricted Payments. Borrower has breached Section 8.4 of the Credit Agreement by making Restricted Payments in the aggregate amount of $270,000 since the Agreement Date and prior to the date hereof.  Failure to comply with Section 8.4 of the Credit Agreement is a continuing Event of Default under Section 9.1(c) of the Credit Agreement.

Shareholder Indebtedness Payments. Borrower has breached Sections 8.1, 8.4, 8.6 and 8.15 of the Credit Agreement by allowing undisclosed purported shareholder indebtedness to exist and making payments in respect of such purported indebtedness. Failure to comply with Sections 8.1, 8.4, 8.6 and 8.15 of the Credit Agreement is a continuing Event of Default under Section 9.1(c) of the Credit Agreement.  Furthermore, failure to disclose such purported shareholder indebtedness constitutes a breach of the representations and warranties contained in Sections 5.1(k), (n) and (r) of the Credit Agreement. Such breach of Sections 5.1(k), (n) and (r) of the Credit Agreement is a continuing Event of Default under Section 9.1(a) of the Credit Agreement.

Scheduled Amortization Payments.  Borrower has breached Sections 2.6(b) of the Credit Agreement by failing to make Scheduled Amortization Payments in respect of the initial Term Loans and the Delayed Draw Term Loan on the last Business Day of the calendar quarters ending March 31, 2020, June 30, 2020 and September 30, 2020.  Failure to comply with this financial covenant is a continuing Event of Default under Section 9.1(b) of the Credit Agreement.

Interest Payments.   Borrower has breached Sections 2.3(a) of the Credit Agreement by failing to make required interest payments on the Term Loans and Delayed Draw Term Loans when due on February 18, 2020, March 20, 2020, April 20, 2020, May 20, 2020, June 22, 2020, July 22, 2020, August 24, 2020, September 24, 2020 and October 26, 2020. Failure to comply with this financial covenant is a continuing Event of Default under Section 9.1(b) of the Credit Agreement.

Unused Fees. Borrower has breached Sections 2.4(c) of the Credit Agreement by failing to make required DDTL Ticking Fee payments when due on March 31, 2020, June 30, 2020 and August 13, 2020.  Failure to comply with this financial covenant is a continuing Event of Default under Section 9.1(b) of the Credit Agreement.

Term Loan Agent Fee.  Borrower has breached Sections 2.4(b)(ii) of the Credit Agreement by failing to make required the "Admin Fee" (as defined in the Term Loan Agent Fee Letter) payment in the amount of $30,000 to the Term Loan Agent when due on February 13,

2020. Failure to comply with this financial covenant is a continuing Event of Default under Section 9.1(b) of the Credit Agreement.

## Exhibit B
**Member Consent**

(see attached)

## WRITTEN CONSENT
## OF THE SOLE MEMBER IN LIEU OF MEETING OF
## AZTEC / SHAFFER, LLC

### November 17, 2020

The undersigned (the "*Member Attorney-In-Fact*"), in its capacity as authorized proxy and duly appointed attorney-in-fact for the sole member (the "*Member*") of Aztec / Shaffer, LLC, a Texas limited liability company (the "*Company*"), pursuant to the Amended and Restated Limited Liability Company Agreement of the Company (as amended by Amendment No. 1 thereto, the "*Operating Agreement*"), hereby waives the calling or holding of a meeting of the Company's members and does hereby approve and adopt the following resolutions and consents in writing, effective as of the date first set forth above, to the actions set forth below, and directs that this written consent (this "*Consent*") be filed with the minutes and proceedings of the Company:

### I.    Amendment and Restatement of Operating Agreement.

**WHEREAS**, pursuant to Sections 10 and 15 of that certain First Lien Security Agreement dated as of February 13, 2019 (as amended, restated, supplemented or otherwise modified and in effect as of the date hereof, the "*Security Agreement*") by and among the Company, each other party executing or joining the Security Agreement as a "Grantor" thereunder, and Cortland Capital Market Services LLC, as collateral agent ("*Collateral Agent*") for all Lenders party to that certain First Lien Credit Agreement dated as of February 13, 2019 (as amended, restated, supplemented or otherwise modified and in effect as of the date hereof, the "*Credit Agreement*"), by and among the Company, Collateral Agent, Cortland Capital Market Services LLC, as administrative agent, Texas Capital Bank, National Association, as revolving agent, the Lenders party thereto and each other party executing or joining the Credit Agreement, the Member Attorney-in-Fact has the right to exercise all voting and other consensual rights of the Member in an Event of Default (as defined in the Credit Agreement) under the Credit Agreement;

**WHEREAS,** pursuant to Section 13 of the Operating Agreement, the Operating Agreement may be amended by the Member; and

**WHEREAS**, the Member Attorney-in-Fact, acting in its authorized capacity, has determined that it is in the best interests of the Company to amend and restate the Operating Agreement, in its entirety in the form attached hereto as Exhibit A (the "*Second A&R Operating*

*Agreement*"), to, among other things, remove the existing Managers and appoint Timothy R. Hassenger of Riverbend Solutions Group, Inc., as the Manager, which the Member Attorney-in-Fact is executing and delivering concurrently herewith.

**NOW, THEREFORE, BE IT RESOLVED**, that the Second A&R Operating Agreement is hereby adopted and approved, effective immediately.

II.   <u>Removal of Managers.</u>

**WHEREAS,** the Member Attorney-in-Fact deems it advisable and in the best interests of the Company to remove all existing Managers.

**NOW, THEREFORE, BE IT RESOLVED**, the existing Managers are hereby removed from their positions as Mangers of the Company, effective immediately.

III.   <u>Appointment of Manager.</u>

**WHEREAS**, the Member Attorney-in-Fact deems it advisable and in the best interests of the Company to appoint Timothy R. Hassenger of Riverbend Solutions Group, Inc., as Manager of the Company to serve until the earlier of (i) election of his or her successor in accordance with the Second A&R Operating Agreement, or (ii) his resignation, removal or death.

**NOW, THEREFORE, BE IT RESOLVED**, that, as set forth in Section 8(d) of the Second A&R Operating Agreement,  Timothy R. Hassenger of Riverbend Solutions Group, Inc. shall be duly elected and appointed as Manager of the Company, effective immediately.

IV.   <u>Dead Hand Provisions.</u>

**WHEREAS**, any provision in any organizational document of the Company that requires or purports to grant prior authorization of (a) the filing of any case, action or proceeding before any court or other governmental authority relating to bankruptcy, reorganization, insolvency, liquidation, receivership, dissolution, winding-up or other relief of debtors, or (b) the making of any general assignment for the benefit of creditors, composition, marshaling of assets for creditors, or other similar arrangement in respect of its creditors generally or any substantial portion of its creditors, in each case in (a) and (b) above, undertaken under U.S. federal, state or foreign law, including the United States Bankruptcy Code (each, a "*Dead Hand Provision*") constitutes a per se violation of applicable law, the duties of care and loyalty, and the implied covenant of good faith and fair dealing.

**NOW THEREFORE BE IT RESOLVED**, that any and all Dead Hand Provisions shall be deemed null and void ab initio, and the Company shall not, and shall cause each of its officers, employees, consultants, agents and other representative not to take any action or assist any third party in taking any action designed to enforce or otherwise give effect to any Dead Hand Provision.

## V.    **Miscellaneous.**

**FURTHER RESOLVED**, that the Manager is authorized, empowered and directed to take or cause to be taken any and all actions, to make all payments, to make any filings or other submissions with any governmental authority, and to negotiate, enter into, execute and deliver any and all agreements, instruments and other documents as may be necessary, appropriate, convenient or proper to effectuate the intent of, and the transactions contemplated by, the foregoing resolutions, such agreements, instruments and other documents to be in such form and to contain such terms and conditions as may be necessary, appropriate, convenient or proper;

**FURTHER RESOLVED**, that all actions taken by any member, manager, officer, agent or attorney of the Company relating to the foregoing resolutions and the transactions contemplated thereby are hereby adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Company; and

**FURTHER RESOLVED**, that for purposes of these resolutions, a facsimile copy or an e-mail of a PDF file containing a copy of the signature page of the person executing these resolutions shall be effective as an original signature and effective as an execution copy thereof.

*Remainder of page left blank intentionally;*
*Signature page follows.*

3

**IN WITNESS WHEREOF**, the undersigned has executed this Consent on and as of the 17th day of November, 2020.

**ASAIG, LLC,**
**a Texas limited liability company**

By: Cortland Capital Market Services LLC, as
Collateral Agent (exercising the voting rights
of ASAIG, LLC, the Sole Member of the
Aztec / Shaffer, LLC pursuant to that certain
First Lien Security Agreement, dated as of
February 13, 2019, by and among the Grantors
and Cortland Capital Market Services LLC, as
Collateral Agent and the power of attorney as
well as the irrevocably proxy granted
thereunder)

By: _____

Name: Jon Kirschmeier

Title: Associate Counsel

*[Signature Page to Written Consent of Sole Member of Accent Food Services, LLC]*

## Exhibit A

**Second Amended and Restated Operating Agreement**

**SECOND AMENDED AND RESTATED
LIMITED LIABILITY COMPANY AGREEMENT
OF
AZTEC / SHAFFER, LLC**

**A Texas Limited Liability Company**

This SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "*Agreement*") OF AZTEC / SHAFFER, LLC (the "*Company*"), dated as of November 17, 2020, is entered into by and between the Company and ASAIG, LLC, a Texas limited liability company and the sole member of the Company (the "*Sole Member*").

WHEREAS, on May 15, 2015, the Company was formed as a limited liability company pursuant to and in accordance with the Texas Business Organization Code, as amended from time to time (the "*Code*");

WHEREAS, each member (each an "*Original Member*", and collectively, the "*Original Members*") party to that certain Limited Liability Company Agreement of Aztec / Shaffer, LLC, dated as of May 15, 2015 (the "*Original Agreement*"), assigned all of its issued and outstanding membership interests in the Company pursuant to those certain Assignments Separate from Interest, dated as of February 1, 2019, by each of the Original Members and the Sole Member;

WHEREAS, on February 1, 2019, the Sole Member entered into that certain Amended and Restated Limited Liability Company Agreement of Aztec / Shaffer, LLC (as amended by Amendment No. 1 dated August 14, 2019, the "*Current Agreement*"), which amended and restated the Original Agreement;

WHEREAS, the Company is a party to (i) that certain First Lien Credit Agreement dated as of February 13, 2019 (as amended, restated, supplemented or otherwise modified and in effect as of the date hereof, the "*Credit Agreement*"), by and among the Company, as borrower, the Sole Member, as guarantor, Cortland Capital Market Services LLC as Term Loan Agent and Collateral Agent ("*Collateral Agent*"), Texas Capital Bank, National Association, as Revolving Agent, and the financial institutions party thereto from time to time as lenders, and (ii) that certain First Lien Security Agreement dated as of February 13, 2019 (as amended, restated, supplemented or otherwise modified and in effect as of the date hereof, the "*Security Agreement*"), by and among the Company and the Sole Member, as grantors, and the Collateral Agent;

WHEREAS, pursuant to Section 15 of the Security Agreement, in an Event of Default (as defined in the Credit Agreement), the Collateral Agent may exercise all voting rights of the Sole Member under an irrevocable proxy and may further exercise all other rights, powers, privileges and remedies to which the Sole Member would be entitled;

WHEREAS, certain Events of Default have occurred and are continuing under the Credit Agreement; and

WHEREAS, the Sole Member, acting through the Collateral Agent as its duly appointed agent, proxy and attorney-in-fact in accordance with its authority under the Security Agreement (the "*Member Attorney-in-Fact*"), desires to amend and restate the Current Agreement in its

entirety, to, among other things, remove the existing Managers and appoint Timothy R. Hassenger, as the Manager.

NOW, THEREFORE, upon execution and delivery hereof by the Member Attorney-In-Fact, the Current Agreement shall be amended and restated as follows:

1.      ***Formation***. On May 15, 2015, the Company was formed as a limited liability company pursuant to the provisions of the Code. Prior to the date hereof, the Original Members assigned all of their membership interests in the Company to the Sole Member and the Sole Member was admitted to the Company as the sole member of the Company. The Sole Member hereby continues the Company as a limited liability company pursuant to the Code and this Agreement. The rights and obligations of the Sole Member and the administration and termination of the Company shall be governed by this Agreement and the Code. In the event of any inconsistency between any terms and conditions contained in this Agreement and any non-mandatory provisions of the Code, the terms and conditions contained in this Agreement shall govern.

2.      ***Name***. The name of the Company is "Aztec / Shaffer, LLC" and the business of the Company shall be conducted under that name, or any other name adopted by the Board (as defined below) in accordance with the Code.

3.      ***Term***. The Company shall have perpetual existence.

4.      ***Purpose***. The purpose of the Company is to carry on any lawful business, purpose or activity for which limited liability companies may be formed under the Code.

5.      ***Sole Member***. The Sole Member shall be the sole member of the Company. The Sole Member shall not have any liability for the obligations or liabilities of the Company except to the extent provided for in the Code. For the avoidance of doubt, the Member Attorney-In-Fact has no interest, beneficial or otherwise, in the membership interests in the Company other than the rights over such interests conferred to the Member Attorney-In-Fact pursuant to the Security Agreement.

6.      ***Distributions***. The Sole Member shall be entitled (a) to receive all distributions (including, without limitation, liquidating distributions) made by the Company, and (b) to enjoy all other rights, benefits and interests in the Company, subject to the rights of the Member Attorney-In-Fact pursuant to the Security Agreement.

7.      ***Taxes***. The Board shall prepare and timely file (on behalf of the Company) all state and local tax returns, if any, required to be filed by the Company.

8.      ***Management by Board of Managers***.

(a)     Except as otherwise provided herein or as required by applicable law, and subject to the delegation of rights and powers as provided for in this Agreement, management of the Company shall be vested exclusively in a Board of Managers (the "***Board***"), consisting of one or more Managers (as used in the Code) appointed, from time to time, by the Sole Member (the "***Managers***"). The Board shall have the sole right and

2

authority to manage the business of the Company, and have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Without limiting the Board's authority under the preceding sentence, the Board shall have all right, power and authority to manage, operate, and control the business and affairs of the Company and to do or cause to be done any and all acts, at the expense of the Company, deemed by the Board to be necessary or appropriate to effectuate the purposes of the Company including, but not limited to, any actions related to the Company's purchase, acquisition, ownership, management, operation, leasing, hypothecation, mortgage or pledge of real or personal property acquired by the Company, the Sole Member or any of their affiliates, or the incurrence of indebtedness by the Company, including any debt financing in connection with the acquisition of such property and any refinancing thereof.

(b)     Subject to the control of the Board, each Manager shall have equal rights in the management and conduct of the Company's business, and shall have all powers and rights necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company; provided, however, that in the event the number of Managers on the Board is more than one (1), no individual Manager may bind the Company without the approval of the Board. In addition, no Manager shall have the authority to act on behalf of the Company with respect to any act that would have required the consent or approval of the Board, unless such act was authorized by the Board.

(c)     Each Manager shall be entitled to one vote on all matters upon which the Managers are entitled to vote (whether at a meeting of the Board or of any committee thereof or otherwise or by written consent).

(d)     The current Board shall consist of one (1) Manager. Timothy R. Hassenger is hereby appointed as the Manager of the Company to serve on the Board until his successor shall have been appointed and qualified or until his earlier resignation, removal, disqualification or death.

(e)     A Manager may be removed, at any time or for any reason (or no reason) by the Sole Member. A Manager may resign at any time upon notice thereof to the Board or the Sole Member, and no acceptance of such resignation shall be necessary. Any vacancies on the Board shall be filled by the Sole Member, in its sole discretion, or may be filled by the remaining Managers on the Board.

(f)     The Board may delegate such authority to manage the Company to such individuals or other entities as the Board from time to time may designate and may revoke any such delegation at any time, including, without limitation, the appointment of natural persons to act as officers of the Company. The officers of the Company, if any are appointed, shall act under the supervision and at the direction of and subject to any restrictions imposed by the Board.

(i)     The officers shall perform such functions as are provided herein or as directed by the Board.

3

(ii)     The Board may delegate to any officer of the Company or to any other natural person such authority to act on behalf of the Company as the Board may from time to time deem appropriate in its sole discretion.  No person so authorized to act on behalf of the Company shall have the authority to act on behalf of the Company with respect to any act that would have required the consent or approval of the Board, unless such act was authorized by the Board.  Subject to the rights, if any, of an officer under a contract of employment, an officer may be removed, either with or without cause, by the Board at any time.

(iii)    Officers shall serve until their successors are appointed and qualify, unless the applicable officer sooner dies, resigns, is disqualified or is removed by the Board.  Vacancies in any office because of death, resignation, removal, disqualification, or other cause shall be filled by a vote of the Board at any regular or special meeting of the Board (or by written consent).

(iv)    Unless the Board otherwise decides, if the title of an officer appointed by the Board is one commonly used for officers of a business corporation formed under the Code, the assignment of such title shall constitute the delegation to such officer of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made to such officer by the Board pursuant to this Agreement.

9.     **_Pledge of Interests_**.  Notwithstanding anything contained herein to the contrary, the Sole Member shall be permitted to pledge or hypothecate any or all of its interests in the Company, including all "membership interests" (as such term is defined in Section 1.002 (54) of the Code), rights to participate in the management and control of the business and affairs of the Company, and status rights as a "member" (as such term is defined in Section 1.002 (53) of the Code), to any lender to the Company or an affiliate of the Company or any agent acting on such lender's behalf, and any transfer of such interests in the Company pursuant to any such lender's (or agent's) exercise of remedies in connection with any such pledge or hypothecation shall be permitted under this Agreement with no further action or approval required hereunder.  Notwithstanding anything contained herein to the contrary, upon the occurrence and continuance of an event of default under the financing giving rise to any pledge or hypothecation of interests in the Company, the lender (or agent) shall have the right, as set forth in the applicable pledge or hypothecation agreement, and without further approval of the Sole Member or any other person and without becoming the Sole Member, to exercise the membership/partnership voting rights of the Sole Member.  Notwithstanding anything contained herein to the contrary, and without complying with any other procedures set forth in this Agreement, upon the transfer of any interests in the Company pursuant to the exercise of remedies in connection with a pledge or hypothecation, (a) the lender (or agent) or transferee of such tender (or agent), as the case may be, shall become the Sole Member under this Agreement and shall succeed to all of the rights and powers, including the right to participate in the management of the business and affairs of the Company, and shall be bound by all of the obligations, of the Sole Member under this Agreement without taking any further action on the part of such lender (or agent) or transferee, as the case may be, and (b) following such transfer, the original Sole Member shall cease to be the Sole Member and shall have no further rights or powers under this Agreement.  The execution and delivery of this Agreement by the Sole Member shall constitute any necessary approval of the Sole Member under the Code to the foregoing provisions

4

of this Section 9. This Section 9 may not be amended or modified so long as any of the interests in the Company is subject to a pledge or hypothecation without the pledgee's (or the transferee of such pledgee's) prior written consent. Each recipient of a pledge or hypothecation of the interests in the Company (and the transferee of such pledgee) shall be a third party beneficiary of the provisions of this Section 9.

        10.    ***Exculpation and Indemnity***.   Notwithstanding any other provisions of this Agreement, whether express or implied, or any obligation or duty at law or in equity, none of the Sole Member, the Member Attorney-In-Fact, the Managers or the officers (individually a "***Covered Person***" and, collectively, the "***Covered Persons***") shall be liable or accountable in damages or otherwise to the Company for any act or omission done or omitted by a Covered Person in good faith, unless such act or omission constitutes willful misconduct. The Company shall indemnify each Covered Person to the fullest extent permitted by law against any loss, liability, damage, judgment, demand, claim, cost or expense incurred by or asserted against the Covered Person (including, without limitation, reasonable attorneys' fees and disbursements incurred in the defense thereof) arising out of any act or omission of the Covered Person in connection with the Company, unless such act or omission constitutes bad faith, gross negligence or willful misconduct on the part of the Covered Person.

        11.    ***Dissolution***.  The Company shall dissolve and its affairs shall be wound up at such time, if any, as the Sole Member may elect. No other event will cause the Company to dissolve.

        12.    ***Governing Law***.  This Agreement is governed by and shall be construed in accordance with the laws of the State of Texas (excluding its conflict-of-laws rules).

        13.    ***Amendments***.  This Agreement may be amended only pursuant to an instrument signed by the Member Attorney-in-Fact so long as one or more Events of Default (as defined in the Security Agreement) have occurred and are continuing. For the avoidance of doubt, notwithstanding anything herein to the contrary, in no event shall the Member take any action (or omit to take any action) hereunder without the prior written consent of the Member Attorney-in-Fact so long as one or more Events of Default (as defined in the Security Agreement) have occurred and are continuing.

*[Signature Page Follows]*

IN WITNESS WHEREOF, each of the undersigned, acting through its duly appointed attorney-in-fact and proxy or representative, has caused this Agreement to be executed as of the date set forth above.

**MEMBER**

ASAIG, LLC

By: Cortland Capital Market Services LLC, as Collateral Agent (exercising the voting rights of ASAIG, LLC, the Sole Member of the Aztec / Shaffer, LLC pursuant to that certain First Lien Security Agreement, dated as of February 13, 2019, by and among the Grantors and Cortland Capital Market Services LLC, as Collateral Agent and the power of attorney as well as the irrevocably proxy granted thereunder)

By: _____

Name:  Jon Kirschmeier

Title:   Associate Counsel

**COMPANY**

AZTEC / SHAFFER, LLC

By:  ASAIG, LLC

By: Cortland Capital Market Services LLC, as Collateral Agent (exercising the voting rights of ASAIG, LLC, the Sole Member of the Aztec / Shaffer, LLC pursuant to that certain First Lien Security Agreement, dated as of February 13, 2019, by and among the Grantors and Cortland Capital Market Services LLC, as Collateral Agent and the power of attorney as well as the irrevocably proxy granted thereunder)

By: _____

Name:  Jon Kirschmeier

Title:   Associate Counsel