IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 20-35599 |
| **AZTEC / SHAFFER, LLC,** *et al.*, | § | |
| | § | **Chapter 11** |
| Debtors.¹ | § | |
| | § | **(Jointly Administered)** |

**DEBTORS' RESPONSE IN OPPOSITION TO EMERGENCY MOTION TO DISMISS**
**(Relates to Doc. No. 8)**

Aztec / Shaffer, LLC, *et al.*, the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this Response in Opposition to Emergency Motion to Dismiss Unauthorized Filing [Doc. No. 8] (the "Motion") and in support hereof, respectfully state as follows:

### I. PRELIMINARY STATEMENT

1. These cases (the "Chapter 11 Cases") commenced on November 17, 2020 (the "Petition Date"), when the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). The movants ("Movants") have alleged that the Chapter 11 Cases were filed without valid corporate authority. The Movants are mistaken.

2. Movants purport to act on behalf of Debtor, Aztec / Schaffer, LLC ("Aztec"), but are, in reality, agents of American General Life Insurance Company ("American Life"), The Variable Annuity Life Insurance Company ("Variable"), and American Home Assurance Company ("American Home", and collectively with American Life and Variable, the "AIG

---

¹ The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Aztec / Shaffer, LLC (2038); and ASAIG, LLC (2323). The Debtors' service address is: 601 W. 6th Street, Houston, Texas 77007.

Lenders") and Cortland Capital Market Services LLC ("Cortland," and collectively with the AIG Lenders, the "First Lien Parties").  Movants' actions are directed by the First Lien Parties in an attempt to collect upon certain prepetition secured obligations of the Debtors.  As will be shown herein, not only are the Movants incorrect regarding the Debtors' authority to commence these Chapter 11 Cases, the continued exercise of collection remedies and attempts to assert control over the property of Debtor ASAIG, LLC ("ASAIG") by the Movants and First Lien Parties constitutes a willful violation of the automatic stay.

## II.  BACKGROUND

3. Formed on or about April 14, 2015, Debtor Aztec, a Texas limited liability company, is one of the premier party rental and tenting specialists in Houston, and provides services for events both domestically and internationally.  The Debtors' two business segments, Aztec Events and Shaffer Sports, have both been in business for over sixty (60) years.  The Debtor was formed to purchase the businesses from the former owner, Double Eagle Sports & Events.

4. The Aztec Events segment of the business maintains the largest party and event rental inventory in the Houston metropolitan area.  It services individuals and corporate clientele hosting events ranging from small weddings to large corporate retreats. Such events include the Houston Livestock Show & Rodeo, the MS150 Bike Ride and the Offshore Technology Conference.  The Shaffer Sports division is a leading event rental company for sporting events throughout North America and the Caribbean.  The Debtor has established itself as the go-to service provider for more than 150 major events, including more than 40 of the PGA Tour's most prestigious golf tournaments, where it provides unique tenting, indoor and outdoor structures, seating, and other products designed meet the client's individual needs.

5. Formed on or about January 23, 2019, Debtor ASAIG, a Texas limited liability company, was formed to act as the holding company for Debtor Aztec, its wholly-owned subsidiary.

## A. The First Lien Debt

6. Prior to the Petition Date, the Debtors were parties to that certain First Lien Credit Agreement dated as of February 13, 2019 (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement")[2], by and among Aztec, as borrower, ASAIG, as guarantor, Cortland (now known as Alterdomus), as term loan agent and collateral agent, Texas Capital Bank, N.A., as revolving agent, and the financial institutions party thereto from time to time, as lenders (the "First Lien Lenders"), including the AIG Lenders.

7. As security against the Debtors' obligations (the "First Lien Debt") under the Credit Agreement, the Debtors granted Cortland, for the benefit of the First Lien Lenders, liens in substantially all of their assets pursuant to that certain First Lien Security Agreement dated as of February 13, 2029 (the "Security Agreement")[3], by and among Aztec and ASAIG, as grantors, and the Collateral Agent. Among other collateral securing the First Lien Debt, ASAIG pledged its 100% equity interest in Aztec (the "Pledged Equity") in favor of the Collateral Agent for the benefit of the First Lien Lenders. Significantly, however, the members of ASAIG are not guarantors under the Credit Agreement and have not pledged their interests in ASAIG.

## B. Events Leading to Bankruptcy

8. Currently, the Debtors derive the totality of their revenue from equipment rentals and related services. As a result, the Debtors' revenues, access to capital, growth as a company, and ultimate profitability are subject to current market conditions which have been severely

---

[2] Attached hereto as "**Exhibit A**."
[3] Attached hereto as "**Exhibit B**."

impacted by COVID-19. In light of the economic realities caused largely by the pandemic, the Debtors have not been able to generate sufficient cash from operations to satisfy their pre-petition indebtedness and various other obligations as they become due and have relied heavily on various lenders to fund operations. These factors have significantly harmed the Debtors' financial position, and as a result, the Debtors have incurred substantial losses from operations, particularly in fiscal year 2020.

9. Prior to the Petition Date, the Debtors were engaged in good-faith negotiations with the First Lien Parties regarding the status of the First Lien Debt, a potential forbearance, and new financing. Ultimately, those discussions were not fruitful and, after the close of business on the Petition Date, Cortland provided notice ("Notice") of its intent to exercise certain rights under the Security Agreement.[4]

10. Attached to the Notice, Cortland provided an executed Written Consent of the Sole Member in Lieu of Meeting of Aztec/Shaffer, LLC (the "Consent") purporting to remove "existing Managers" and appointing Timothy Hassenger as Manager of Aztec. Significantly, the Notice expressly states that neither the Notice nor the Consent "shall cause the transfer of the Pledged Equity to the Collateral Agent." As expressly acknowledged in the Notice, the Consent only became effective upon receipt of the Notice.

11. Pursuant to the express terms of the Credit Agreement, because Cortland's Notice was sent after the close of business, it was not effective until the open of business on the next business day for the Debtors. Specifically, Section 10.1 of the Credit Agreement expressly provides that if notices or other communications are sent after 5:00 p.m. (New York time) on a

---

[4] *See* Email from Anastasia Sotiropoulos sent Tuesday, November 17, 2020 at 5:58 p.m., to Kelley Williams, *et al.*, regarding Cortland/Aztec – Pledge Enforcement Letter (attached hereto as "**Exhibit C**"); *see also* Notice of Exercise of Certain Rights Pursuant to First Lien Credit Agreement and First Lien Security Agreement (attached hereto as "**Exhibit D**").

business day for the recipient, then such communications are "deemed to have been sent at the opening of business of the next business day for the recipient." *See* **Exhibit A**, p. 127-28. Accordingly, the Notice and Consent were not received, nor did they become effective, before the opening of business on November 18, 2020.

12. Prior to Cortland's notice becoming effective, ASAIG duly authorized the commencement of these Chapter 11 Cases.

### III. OBJECTION

13. Movants' sole argument for dismissal assumes that both Cortland's exercise of voting rights under the Security Agreement and delivery of the Consent became effective on the Petition Date. As set forth above, that argument fails under the applicable provisions of the Credit Agreement. Because the Notice and Consent were not effective until the open of business on November 18, 2020, these Chapter 11 Cases were commenced prior to the removal of the managers.

14. Moreover, it is uncontested by the First Lien Parties that ASAIG's own bankruptcy was duly authorized. Upon that filing, the First Lien Parties were prohibited from taking any action to collect, assess, or recover the First Lien Debt or taking any action to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate. 11 U.S.C. § 363(2), (6).

15. Property of ASAIG's estate expressly includes ASAIG's membership interests in Aztec and the voting and management rights associated therewith. *See In re Gencanna Glob. USA, Inc.*, No. 20-50133, 2020 Bankr. LEXIS 1742, at *13 (Bankr. E.D. Ky. July 2, 2020) ("Equity voting rights are property of the estate."); *see also Caymus Ventures, LLC v. Jundanian (In re Jundanian)*, Nos. 10-21513-TJC, 11-00185, 2012 Bankr. LEXIS 1370, at *16 (Bankr. D. Md. Mar.

5

30, 2012) (finding that voting and management rights under a limited liability company agreement were property of the debtor's estate). Accordingly, upon the commencement of ASAIG's Chapter 11 Case, the First Lien Parties were prohibited by the automatic stay from exercising control over ASAIG's right to vote its membership interest or from managing Aztec or from otherwise exercising any pledged rights in an effort to collect the First Lien Debt. *See In re MARVEL Entm't Grp.*, 209 B.R. 832, 839 (D. Del. 1997) ("Because the pledged shares were property of the Marvel Holding Companies' estates, appellants were required to seek […] relief from the automatic stay [before] exercising control over those shares."); *cf In re Bicoastal Corp.*, Case No. 89-8198-8P1, 1989 Bankr. LEXIS 2046, at *18 (Bankr. M.D. Fla. Nov. 21, 1989) (finding that the automatic stay prohibited a creditor and preferred shareholder of the debtor from exercising its right to elect a majority of the debtor's board of directors that accrued when the debtor failed to timely repay the creditor/preferred shareholder's loan to the debtor).

16. Thus, contrary to First Lien Parties' position, from and after the filing of the petitions and notwithstanding any provision of the Security Agreement, ASAIG, not Cortland, is authorized to exercise any voting rights resulting from ASAIG's interest in Aztec.

## IV. HARM TO THE DEBTORS

17. As set forth herein, the First Lien Parties are violating the automatic stay by attempting to exercise control over property of ASAIG's estate. Moreover, the First Lien Parties' actions have caused significant confusion amongst the Debtors' customers and critical vendors. As a result, during the first critical days of these Chapter 11 Cases, the Debtors have been severely hampered in their ability to have effective dialogue with customers, vendors, and other lenders. Put simply, the First Lien Parties' willful violation of the automatic stay is causing significant damage to the Debtors and the Debtors' estates. As reflected in the attached letters supporting the

Debtors and existing management, the First Lien Parties' actions also threaten to cause harm to the Debtors' vendors.  *See* **Exhibit E**.  The Debtors expressly reserve the right to seek damages pursuant to Bankruptcy Code § 105 as a result.

## V.   PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an order: (i) denying the Motion with prejudice; and (ii) granting the Debtors such other and further relief as the Court may deem just and proper.

Respectfully submitted on the 21st day of November, 2020.

          **OKIN ADAMS LLP**

          By:    /s/ *Matthew S. Okin*
                Matthew S. Okin
                Texas Bar No. 00784695
                Email: mokin@okinadams.com
                David L. Curry, Jr.
                Texas Bar No. 24065107
                Email: dcurry@okinadams.com
                Ryan A. O'Connor
                Texas Bar No. 24098190
                Email: roconnor@okinadams.com
                1113 Vine St., Suite 240
                Houston, Texas 77002
                Tel: 713.228.4100
                Fax: 888.865.2118

          **PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2020, a true and correct copy of the foregoing Response was served: (i) via the Court's CM/ECF system to all parties consenting to service through the same; and (ii) via email to counsel for the Movants.

          By:    /s/ *Matthew S. Okin*
                Matthew S. Okin