# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-35599** |
| **AZTEC / SHAFFER, LLC,** *et al.*, | § | |
| | § | **Chapter 11** |
| Debtors.[1] | § | |
| | § | **(Jointly Administered)** |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO PAY OR HONOR PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS, AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 23, 2020 AT 9:30 A.M. IN COURTROOM 404, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.  YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AUDIO/VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.  YOU MAY ACCESS THE FACILITY AT (832) 917-1510.  YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**

**YOU MAY VIEW VIDEO VIA GOTOMEETING.  TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE.  ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING.  TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU.  SELECT "JUDGES' PROCEDURES" THEN "VIEW HOME PAGE" FOR JUDGE ISGUR.  UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS, AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

---

[1] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Aztec / Shaffer, LLC (2038); and ASAIG, LLC (2323).  The Debtors' service address is: 601 W. 6th Street, Houston, Texas 77007.

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 23, 2020.**

Aztec / Shaffer, LLC, *et al*., the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Pay or Honor Prepetition Obligations to Certain Critical Vendors, and (II) Authorizing Financial Institutions to Honor All Related Checks and Electronic Payment Requests* (the "Motion"), and in support hereof, respectfully states as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this Motion are sections 105(a), 363, 541, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), Rule 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## II.  BACKGROUND

**A.      In General**

3.      On November 17, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4.      Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

5.      Formed on or about April 14, 2015, Debtor Aztec / Shaffer, LLC ("Aztec"), a Texas limited liability company, is one of the premier party rental and tenting specialists in Houston, and provides services for events both domestically and internationally.  Formed on or about January 23, 2019, Debtor ASAIG, LLC ("ASAIG"), a Texas limited liability company, was formed to act as the holding company for Debtor Aztec, its wholly-owned subsidiary.

6.      Additional information about the Debtors' businesses and affairs, capital structure, prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of A. Kelly Williams in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is filed on the Court's docket contemporaneously with this Motion and is incorporated herein by reference.

**B.      The Debtors' Critical Vendors**

7.      On and after the Petition Date, the Debtors quickly assessed all of their vendors with possible outstanding claims as of the Petition Date to determine which vendors are necessary to the success of the Debtors' operations in connection with these Chapter 11 Cases (collectively, the "Critical Vendors").  The Debtors considered the following factors to determine who is a Critical Vendor:

(i)      whether a vendor could claim a lien;

(ii)     whether a vendor is essential to the continued operation of the Debtors' businesses;

3

      (iii)     whether a vendor is replaceable without significant disruption to the Debtors' operations;

      (iv)     whether a vendor is entitled to a claim under Bankruptcy Code section 503(b)(9); and

      (v)     whether a vendor is likely to continue doing business with the Debtors notwithstanding nonpayment of prepetition claims.

8.     The Debtors rely in the ordinary course of business on the Critical Vendors to supply goods, materials and services without which the Debtors' businesses either could not operate or would operate at significantly reduced profitability.  A list of parties in interest the Debtors have determined to be Critical Vendors, along with the amount of such Critical Vendors' prepetition claims against the Debtors, is attached hereto as **Exhibit A** and incorporated by reference herein.

9.     The Debtors contemplate making payments on prepetition Critical Vendor Claims that become payable post-petition in the ordinary course of their businesses as and when they become due.  Additionally, for reasons described in detail below, the Debtors seek permission to make payments on certain prepetition Critical Vendor Claims that have come due prepetition in a manner, amount and time that is subject to the Debtors' discretion, subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral and any accompanying approved budget.

10.     The Debtors believe that the payment of the Critical Vendor Claims is vital to the Debtors' reorganization efforts.  In many cases the Critical Vendors are the only source, or the most preferred source, from which the Debtors can procure certain goods and services within a timeframe and at a price that will permit the Debtors to continue to smoothly operate their businesses.  A failure to pay the Critical Vendor Claims would likely result in many of the Critical Vendor refusing to provide goods and services to the Debtors post-petition and may

force the Debtors to obtain such goods and services elsewhere at a much higher price or in a quantity or quality that is insufficient to satisfy the Debtors' requirements.

11.     A vendor may be the exclusive or preferred supplier of products or services to the Debtors for a number of reasons.  In some cases, it may be the case that the only way that the Debtors are able to purchase products or services in quantities of the desired amount is through a particular vendor.  In other cases, the Debtors have an established relationship with one vendor, and there is simply no available supply from any other vendor, or the time and expense of getting another vendor "up to speed" with the Debtors' ongoing projects – many of which take months to conclude – is not cost effective.  In other instances, due to preferred pricing from existing business relationships, procuring a particular supply of a certain product from an alternative source would be too expensive.

12.     The timing of a vendor's supply may also render it a Critical Vendor.  The Debtors are involved in a highly transactional and capital intensive business with numerous domestic and international projects and events.  As a result, the Debtors are highly dependent on their ability to order and receive materials from vendors in a particular timeframe.  Current Critical Vendors are familiar with the Debtors' numerous projects and events and if, for example, a particular item or equipment is needed at any event which the Debtors are servicing, the current Critical Vendors can deliver the right product.

13.     The Debtors believe that, absent the ability to pay certain prepetition amounts owed to Critical Vendors, the Debtors' access to necessary goods and services would be extinguished as the Critical Vendors will refuse to continue doing business with the Debtors or may only do business if the Debtors provide trade term accommodations such as advance deposits or payment prior to delivery.

14.     As of the filing of this Motion, the Debtors have already received numerous invoices from their Critical Vendors who await payment from the Debtors.

### III.  RELIEF REQUESTED

15.     By this Motion, the Debtors request the entry of an order, substantially in the form submitted herewith: (i) authorizing the Debtors, in their discretion, to pay all or part of the claims of certain Critical Vendors that have provided (a) essential goods to, or on behalf of, the Debtors that were received by the Debtors before the Petition Date; and/or (b) essential services that were rendered to, or on behalf of, the Debtors before the Petition Date (collectively, the "Critical Vendor Claims").

16.     The Debtors further request authorization for the Debtors' banks, including Texas Capital Bank, N.A. ("TCB"), to honor, process and pay (to the extent funds are available in their accounts) any pre-petition checks or wire transfer requests issued by the Debtors on account of the Critical Vendor Claims. The Debtors also seek authority to issue new post-petition checks, or effect new electronic fund transfers, to replace any pre-petition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the filing of these Chapter 11 Cases.

17.     Subject to the Court's approval, the Debtors intend to pay the Critical Vendor Claims only to the extent necessary to preserve the value of their estates, and subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral and any accompanying approved budget.  To that end, in return for paying all or a portion of the Critical Vendor Claims, the Debtors propose that they be authorized to require the Critical Vendors to provide favorable trade terms for the post-petition procurement of their goods and services.  The Debtors seek authorization to condition payment of the Critical Vendor Claims upon each Critical Vendor's agreement to: (a) continue – or recommence – providing

goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"); and (b) agree that they shall not be permitted to cancel on less ninety (90) days' notice any contract or agreement pursuant to which they provide services to the Debtors.  The Debtors also seek authorization to require, as necessary, the Critical Vendors to enter into a contractual agreement evidencing such Customary Trade Terms.

18.    The Debtors further request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter ceases to provide goods and services in accordance with the Customary Trade Terms: (a) the Debtors may take any and all appropriate steps to recover from such Critical Vendor any payments made to it on account of its prepetition Critical Vendor Claim to the extent that such payments exceed the post-petition amounts then owing to such party; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding post-petition balance is due from the Debtors to such party, (i) the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding post-petition balance, and (ii) such party will be required to repay to the Debtors such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## IV.  BASIS FOR RELIEF REQUESTED

19.    Ample authority exists to allow payment of the Critical Vendor Claims.  Courts have generally acknowledged that it is appropriate to authorize the payment (or other special

treatment) of prepetition obligations in appropriate circumstances.  In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

**A.**     **Sections 1107(a) and 1108 of the Bankruptcy Code and the Debtors' Fiduciary Duties**

20.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries acting "to protect and preserve the estate, including an operating business's going concern value," on behalf of the debtors' creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re Co Serv, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ,* 273 B.R. at 497.  Some courts have noted that there are instances in which a debtor can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.*

**B.**     **Section 363(b) of the Bankruptcy Code and a Sound Business Justification**

21.     Consistent with the debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b)(1) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See* 11 U.S.C. § 363(b)(1); *In re Tropical Sportswear*, 320 B.R. 15, 17-18 (M.D. Fla. 2005) (court authorized payment to critical vendors for prepetition amounts when a sound business justification existed because the vendors would not do business with the debtors absent the critical vendor status, and the disfavored creditors were not any worse off due to the critical vendor order); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.

8

S.D.N.Y. 1989) (sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (Bankr. S.D.N.Y. 1983) (court relied on section 363 and allowed contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).  To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Ionosphere Clubs*, 98 B.R. at 175.

22.     As discussed above, payment of Critical Vendor Claims will prevent severe disruption of the Debtors' ongoing operations.  Should the Debtors fail to make such payments, Critical Vendors may also have the ability to place liens upon the property of the Debtors or their customers, severely damaging the Debtors' relationship with their customers.  In turn, the Debtors may be required to indemnify the customers from and against such liens under the terms of applicable agreements between the parties.  Given the significant consequences, both contractual and reputational, to the Debtors should they fail to timely pay vendors, the Debtors contend that any payment to a Critical Vendor identified in **Exhibit A** should be authorized.

## C.     Section 105(a) of the Bankruptcy Code and the Necessity of Payment Doctrine

23.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business.  Specifically, the Court may use its power under section 105(a) to authorize payment of

prepetition obligations pursuant to the "doctrine of necessity" or "necessity of payment" rule. The Court may, therefore, issue any order "necessary or appropriate" to allow a debtor in possession to fulfill its duty to preserve the business' going-concern value, including an order authorizing payment in full or in part of certain prepetition claims of unsecured creditors prior to confirmation of a plan.  *See CoServ*, 273 B.R. at 496-97; *see also In re Mirant Corp., et al.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003).

24.     Today, the rationale for the necessity of payment rule – the rehabilitation of a debtor's business – is "the paramount policy and goal of Chapter 11," *Ionosphere Clubs, Inc.*, 98 B.R. at 176; *see also In re Lehigh & New England Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "doctrine of necessity" permits "immediate payment of claims to creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Boston & ME. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtor's continued operation); *CoServ*, 273 B.R. at 500 (permitting chapter 11 debtor to pay the claim of a prepetition general unsecured creditor in full because the "[d]ebtors very likely must deal with [such creditor] or risk harm to their estates or their going concern value").

25.     Courts routinely authorize chapter 11 debtors to pay prepetition claims of non-priority general unsecured creditors when payment is necessary to preserve or enhance the value of the debtor's estate to the benefit of all creditors.  *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *Lehigh & New England Ry. Co.*, 657 F.2d at 581 (stating that courts

may authorize payment of prepetition claims where there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *In re Just For Feet*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("to invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claim is critical to the debtor's reorganization"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

26.     Oftentimes, the debtor must satisfy a prepetition claim in order to preserve its business.  *CoServ*, 273 B.R. at 497.  Payment of prepetition claims is necessary, and may be authorized, whenever it is established that (1) it is critical that the debtor deal with the claimant, (2) a failure to deal with the claimant risks probable harm or eliminates an economic advantage disproportionate to the amount of the claim, and (3) there is no practical or legal alternative to payment of the claim.  *Id*.

27.     Advance proof of necessity of payment, however, is not required in every instance.  *See In re Mirant Corp.*, 296 B.R. at 429.  A chapter 11 debtor, especially early in the case, is in a "precarious position," and serious damage could occur to the debtor's business if courts required advance proof that each payment of a prepetition claim was necessary within the meaning of the *CoServ* test.  *Id*.  Therefore, courts often grant the debtor general authority to pay the prepetition claims of critical vendors as necessary.  *Id*.

28.     The Debtors' request for relief is appropriate under the foregoing standards.  As stated above, the payment of the Critical Vendor Claims is essential to the operation of the Debtors' businesses.  In turn, the maintenance of the Debtors' businesses during these Chapter 11 Cases is crucial to the Debtors' ability to rehabilitate for the benefit of all stakeholders.

29.     Courts in this district have granted similar relief in other chapter 11 cases where the payment of critical vendor claims was necessary to the debtors' continued operation.  *See,*

*e.g., In re ATP Oil and Gas Corp.*, No. 12-36187 (MI) (Bankr. S.D. Tex. Aug. 21, 2012); *In re Linn Energy, LLC*, 16- 60040 (DJ) (Doc. Nos. 82, 401) (Bankr. S.D. Tex. May 13, 2016; June 29, 2016); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. May 3, 2016); *In re Midstates Petrol. Co., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016).

## V.   EMERGENCY CONSIDERATION

30.     The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i) and Bankruptcy Rule 6003, which authorizes a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could cause irreparable harm.  Furthermore, the failure to receive the requested relief would severely disrupt the Debtors' operations at this critical juncture and imperil the Chapter 11 Cases. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## VI.   NOTICE

31.     Notice of this Motion has been provided by telecopy, email, overnight courier and/or hand delivery, to: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the Debtors' prepetition secured lenders, Texas Capital Bank, N.A. and AIG Asset Management (U.S.), LLC; (iii) the collateral agent and administrative agent for the prepetition secured lenders, Cortland Market Services LLC; (iv) the 30 largest unsecured creditors of each of the respective Debtors (as found on Official Form 204); (v) the Internal Revenue Service; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the hearing and the relief requested in the Motion constitutes due,

sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 9014, the Bankruptcy Local Rules and the Complex Case Procedures.  The Debtors submit that no other or further notice need be provided.

## VII.  PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto: (i) granting the relief requested in this Motion; and (ii) granting the Debtors such other and further relief as the Court may deem just and proper.

Respectfully submitted on the 22nd day of November, 2020.

**OKIN ADAMS LLP**

By:      /s/ *Matthew S. Okin*
     Matthew S. Okin
     Texas Bar No. 00784695
     Email: mokin@okinadams.com
     David L. Curry, Jr.
     Texas Bar No. 24065107
     Email: dcurry@okinadams.com
     Ryan A. O'Connor
     Texas Bar No. 24098190
     Email: roconnor@okinadams.com
     1113 Vine St., Suite 240
     Houston, Texas 77002
     Tel: 713.228.4100
     Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify to the accuracy of the matters set forth in the foregoing Motion.

By:      /s/ *Matthew S. Okin*
     Matthew S. Okin